[No. B169516. Second Dist., Div. Four. July 21, 2004.]

CARLYN D. JOHNSON et al., Plaintiffs and Appellants, v. CAPITAL ONE BANK, Defendant and Respondent.

■

## COUNSEL

Strange & Carpenter, Brian R. Strange, Gretchen Carpenter; Law Offices of Barry L. Kramer and Barry L. Kramer for Plaintiffs and Appellants.

Morrison & Foerster, John W. (Jack) Alden Jr., James F. McCabe, James R. McGuire and Wendy M. Garbers for Defendant and Respondent.

## OPINION

**EPSTEIN, J.— ■** Pursuant to Virginia law, which governs this action, credit card holders who sue a credit card issuer for conduct that does not comply with the federal Truth-in-Lending Act (TILA, 15 U.S.C. § 1601 et seq.) are limited to the remedies provided by TILA and its implementing regulations. We conclude the trial court properly granted summary judgment in favor of the credit card issuer in this action for breach of the cardmember agreements, since the action is based on conduct regulated by TILA.

### FACTUAL AND PROCEDURAL SUMMARY

Defendant Capital One is a Virginia-chartered bank. Plaintiffs Carlyn Johnson and Tad Lumpkin each entered into cardmember agreements with Capital One for credit card accounts. These agreements expressly provide that they "will be governed by Virginia law and Federal law." Plaintiffs brought this class action[1] against Capital One for breach of contract. They alleged that Capital One charged late charge penalties even when cardmembers' payments were received "in time . . . to be credited by the following statement closing date" in direct violation of the terms of the cardmember agreements. They also alleged that Capital One improperly calculated daily balances and finance charges, in violation of the cardmember agreements, resulting in excess finance charges. By this conduct, plaintiffs alleged, Capital One breached the express and implied terms of the contract and the implied covenant of good faith and fair dealing.

---

[1] Class certification had not been granted at the time judgment was entered against plaintiffs.

■ Capital One moved for summary judgment, asserting that under Virginia law, plaintiffs cannot maintain their breach of contract claims because the challenged conduct was actionable under TILA. This argument was premised on Virginia Code section 6.1-330.79, which provides that every lender subject to TILA that fails to comply with its statutes and regulations in the offering or extending of consumer credit "shall not be subject to any liability or penalty beyond those imposed by such federal statutes and regulations." The trial court granted summary judgment on this basis. The court gave plaintiffs the opportunity to file a motion for leave to amend to assert a claim for violation of TILA. Plaintiffs chose not to do so, and the court entered judgment in favor of Capital One. This is a timely appeal from the judgment.

## DISCUSSION

### I

■ Plaintiffs argue that the savings clause in TILA preserves their action under Virginia law. That section, 15 United States Code section 1610(d) provides, with exceptions not applicable to this case, that TILA "and the regulations issued thereunder do not affect the validity or enforceability of any contract or obligation under State or Federal law." We agree that TILA does not preclude an action under state law. But the State of Virginia has, by legislation, surrendered its authority to provide state remedies for TILA violations.

Virginia Code section 6.1-330.79 provides: "Every person subject to the provisions of 15 U.S.C. § 1601 et seq. and Regulation Z, Truth-in-Lending, promulgated by the Board of Governors of the Federal Reserve System shall comply with such statutes and regulations when offering or extending consumer credit as defined therein. *A lender who fails to comply with this section shall not be subject to any liability or penalty beyond those imposed by such federal statutes and regulations.*" (Italics added.) If, as defendant asserts, plaintiffs' action alleges noncompliance with the provisions of TILA, this statute limits defendant's liability or penalty to that imposed under TILA and Regulation Z.

There appear to be no Virginia cases on this point, but an opinion by the Office of the Attorney General of the State of Virginia (No. 01-079 (Sept. 12, 2001) 2001 Va. AG LEXIS 28) considers the question. In California, an opinion by the state Attorney General, " 'while not binding, [is] entitled to great weight. [Citations.] In the absence of controlling authority, these

opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute." ' [Citation.]" (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796].) This is the rule in Virginia as well. (See *Andrews v. Shepherd* (1959) 201 Va. 412, 415 [111 S.E.2d 279, 282].)

The Attorney General of Virginia considered the hypothetical situation of a Virginia lender, subject to TILA, that established an open-end consumer credit account with a borrower. The lender posted the borrower's payments to the account on the day they were received, if they were received by a particular cut-off hour, as provided in its notice. Payments received after the cut-off hour were posted as of the following business day. The borrower claimed payments received after the cut-off hour must be posted as of the day received.

The Attorney General found the statute required Virginia creditors to comply with TILA and Regulation Z, and stated in his opinion that "[section] 6.1-330.79 clearly intends to preclude other state law claims where the conduct forming the basis of a claim is regulated by federal law. Such regulated conduct would include conduct that is required, specifically permitted, or prohibited by federal law. [¶] You also ask whether a plaintiff who brings a claim under Virginia law regarding conduct regulated by [section] 6.1-330.79 is limited substantively and procedurally to the remedies and recovery allowed by the Federal Truth-in-Lending Act and Regulation Z. [¶] Because I conclude that [section] 6.1-330.79 clearly and unambiguously precludes other state law claims where the conduct forming the basis of a claim is regulated by federal law, I must also conclude that a claim under Chapter 7.3 of Title 6.1 is limited substantively and procedurally to the remedies and recovery allowed by federal law. In the hypothetical situation you present, therefore, a borrower who disputes the lender's ability to establish a cut-off hour or the reasonableness of the hour for posting payments to his account is limited by [section] 6.1-330.79 to seeking redress under federal law. Section 6.1-330.79, in my view, prohibits such borrower from recasting his claim under other state law theories." (No. 01-079, *supra*, 2001 Va. AG LEXIS 28, *4–*6.)

We find this interpretation reasonable and persuasive. Virginia law expressly limits a borrower to remedies under federal law where the claim is based on conduct regulated under TILA and Regulation Z.

## II

Plaintiffs seek to avoid this limitation, arguing their action is based on breach of the cardmember agreements, not violation of TILA. In our view, this is too narrow a reading of TILA.

One of the purposes of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." (15 U.S.C. § 1601.) Toward that end, 15 United States Code section 1666c provides: "Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Board. Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form in the amount, manner, location, and time indicated by the creditor to avoid the imposition therof."

The relevant implementing rules for TILA are found in Regulation Z, 12 Code of Federal Regulations part 226. Section 226.10 addresses the prompt crediting of payments: "(a) General rule. A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge or except as provided in paragraph (b) of this section. [¶] (b) Specific requirements for payments. If a creditor specifies, on or with the periodic statement, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt. [¶] (c) Adjustment of account. If a creditor fails to credit a payment, as required by paragraphs (a) and (b) of this section, in time to avoid the imposition of finance or other charges, the creditor shall adjust the consumer's account so that the charges imposed are credited to the consumer's account during the next billing cycle."

The Official Staff Interpretation explains: "Section 226.10(a) does not require the creditor to post the payment to the consumer's account on a particular date; the creditor is only required to credit the payment as of the date of receipt." (12 C.F.R § 226.10(a) (Supp. I 2003).) A creditor may specify requirements for making payments, such as "Setting a cut-off hour for payment to be received, or set different hours for payment by mail and payments made in person." (12 C.F.R § 226.10(b)(1) (Supp. I 2003).)

With this background, we turn to the allegations of the complaint. Plaintiffs alleged that Capital One breached its contract based on the following conduct:

"17. Capital One's Cardmember Agreements expressly provide for a late charge penalty in the event Capital One does not receive the cardmember's

payment 'in time for it to be credited by the following statement closing date.'

"18. Plaintiffs are informed and believe and thereon allege that Capital One has frequently charged 'late charge' penalties to its cardholders even when the required payments were received 'in time for them to be credited by the following statement closing date,' in direct violation of the express and implied terms of its Cardmember Agreements.

"19. The Cardmember Agreements further expressly provide for the calculation of the average daily balance and Finance Charges by subtracting payments made on a daily basis. Plaintiffs are informed and believe and thereon allege that Capital One violated the express and implied terms of its Cardmember Agreements for the calculation of daily balances and Finance Charges by failing to subtract payments on a daily basis in accordance with the terms of said Agreements, resulting in excess finance charges."

These allegations refer to the provision in the cardmember agreements stating when late charges will be incurred ("if we do not receive your payment in time for it to be credited by the following statement closing date . . . ."), and the provision setting out when payments will be subtracted from an account balance in order to calculate the daily balance on which finance charges are based ("We then subtract any payments or credits posted as of that day . . . .") Plaintiffs allege that defendant did not credit these payments as provided in the agreement, resulting in late charges and excess finance charges.

These claims fall squarely within the purview of 15 United States Code section 1666c, which requires a creditor to post payments promptly to an obligor's account, pursuant to regulations which "shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form in the amount, manner, location, and time indicated by the creditor to avoid the imposition therof."

While the assessment of late fees and finance charges in a manner inconsistent with the cardmember agreements may be a breach of contract, it would also, if proven, constitute a violation of the provisions of TILA and Regulation Z. Pursuant to Virginia Code section 6.1-330.79, defendant "shall not be subject to any liability or penalty beyond those imposed" by TILA and Regulation Z. Plaintiffs cannot seek any other remedy for this alleged conduct. Since the complaint did not seek relief based on TILA or Regulation Z, the trial court properly granted summary judgment to defendant.

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

A petition for a rehearing was denied August 12, 2004, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 10, 2004.